IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE P., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Acting Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 18-cv-5763 <br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lawrence P.[2] filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act). The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C § 636(c). For the reasons stated below, the Court grants the Commissioner's motion for summary judgment [22] and denies Plaintiff's motion for summary judgment [15]. The Commissioner's decision is affirmed.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on May 20, 2014, alleging that he became disabled on January 14, 2011. (R. at 18). The application was denied initially and on

---

[1] Andrew M. Saul has been substituted for his predecessor, Nancy A. Berryhill, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

[2] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 135–37). On May 12, 2017, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 884–911). The ALJ also heard testimony from Tammie C. Donaldson, a vocational expert (VE). (*Id.* at 906). The ALJ denied Plaintiff's request for benefits on August 23, 2017. (*Id.* at 18–31). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 14, 2011. (*Id.* at 21). At step two, the ALJ found that Plaintiff had severe impairments of morbid obesity and asthma. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the enumerated listings in the regulations. (*Id.* at 22). The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff has the RFC to perform medium work[4], except:

> [He] can never climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, kneel or crawl. In addition, the claimant can tolerate occasional exposure to extremes of temperature and fumes, odors, dusts or gases. He can tolerate occasional exposure to hazards.

(*Id.* at 22). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff was unable to perform any past relevant work. (*Id.* at 29). However the ALJ concluded that considering Plaintiff's age, education, work

---

[3] "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 CFR 404.1545(a).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (*Id*. at 30). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Act, from the alleged onset date of January 14, 2011 through the date of the ALJ's decision. (*Id*. at 31). The Appeals Council denied Plaintiff's request for review on July 3, 2018. (*Id*. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Administration (SSA). 42 U.S.C. § 405(g). The Court may not engage in its own analysis of whether the plaintiff is disabled nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. Substantial evidence "must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citation omitted). In addition, the ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (internal quotations and citation omitted).

Therefore, "[w]e will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Moore v. Colvin*, , 1120–21 (7th Cir. 2014) (internal quotations and citation omitted). The court "cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). "[I]f reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). *See also Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (standard of review is deferential).

## III. DISCUSSION

In his request for reversal or remand, Plaintiff argues that the ALJ erred in her assessment of the treating source opinion, medical evidence, and Plaintiff's hearing testimony. Plaintiff contends the ALJ should have found him capable of only sedentary work and in addition, failed to develop the record. The Court finds the ALJ's decision was supported by substantial evidence.[5]

## A. ALJ Did Not Err in Giving No Weight to the Treating Doctor Opinion

On March 13, 2017, internist Dr. Jaskaran Sethi, Plaintiff's treating doctor, completed a two-page physical capacities evaluation form.[6] (R. at 880–82). In the

---

[5] Plaintiff's record citations are at times confusing or misleading where the record cited to support Plaintiff's statement does not actually support it. One example is Plaintiff's statement that he "was diagnosed with lower back pain, shortness of breath and asthma exacerbation", citing R. at 393 (Dk. 16 at 4). But page 393 is a progress note referring only to an echocardiogram and Plaintiff's stroke.

[6] The Court agrees with Defendant that there is only one treating source opinion in the record, despite Plaintiff's references, without specific identification, to treating source opinions, plural.

evaluation, Dr. Sethi marked the box next to "sedentary" to indicate Plaintiff's work capacity. The ALJ gave no weight to this assessment. (R. at 29). This was not error. The ALJ gave good reasons for discounting Dr. Sethi's opinion.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight *if* it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Stephens*, 888 F.3d at 328 (emphasis added) (internal citations and quotations omitted). An ALJ may give less than controlling weight "to medical opinions based on subjective reports." *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018).[7]

Contrary to Plaintiff's assertion (Dkt. 16 at 11), and as discussed below, the ALJ sufficiently addressed the regulatory factors in 20 C.F.R. § 404.1527(c). She did not need to specifically discuss each one. The Seventh Circuit has stated that "[i]n weighing a treating physician's opinion, an ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only 'minimally articulate' his reasoning; the ALJ *need not* explicitly discuss and weigh each factor." *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (emphasis added).

The ALJ acknowledged Dr. Sethi was Plaintiff's internist but gave several reasons why she discounted his opinion: (1) it was based on subjective complaints; (2) it was inconsistent with treatment notes; (3) Plaintiff's conditions were

---

[7] In 2017, the SSA adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules only apply to disability applications filed on or after March 27, 2017, they are not applicable here. *See id; see also* SSR 96-2p.

controlled and/or being treated; (4) Plaintiff did not report any complaints about his arms to his doctor; (5) Plaintiff was instructed to engage in daily aerobic activity; and (6) there was no indication Dr. Sethi was aware of the standards of the disability program. (R. at 29).

In his evaluation, Dr. Sethi expressly stated, *twice*, that his assessment was "subjective." At the beginning of the evaluation, he wrote, "these assessments are subjective." At the end, responding to the question asking to "indicate the basis for your opinion, including any clinical observations, medical findings, reports and lab test results, Dr. Sethi wrote, "subjective assessment of symptoms of asthma, OSA [obstructive sleep apnea], and stroke." Further, he filled in check boxes on the form but did not provide any reference to medical examinations or records. *See Horner v. Berryhill*, 2018 U.S. Dist. LEXIS 44883, at *7 (N.D. Ill. Mar. 20, 2018) (agreeing with reasons discounting treating source opinion including that "the opinion consists only of a series of check marks on a form without any accompanying explanation or citation to supporting records.").

Plaintiff contends that the ALJ improperly disregarded Dr. Sethi's opinion and instead "played doctor." But the ALJ explained, correctly, that Dr. Sethi's assessment was not consistent with his own treatment records. *See Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012) ("ALJ did not improperly 'play doctor' by examining the medical record and determining that [treating doctor's] conclusions were unsupported by his own notes or contradicted by other medical evidence."); *Johnson v. Colvin*, 2016 U.S. Dist. LEXIS 113477, at *16 (N.D. Ill. Aug. 25, 2016)

("the ALJ was not required to depend solely on the treating physician's opinion expressed in the RFC form because, as she observed, it is not supported by the physician's own treatment records.").

Dr. Sethi's records showed that in July 2016, Plaintiff came in with "no complaints" [*sic*]; on physical examination, Plaintiff was in "no acute distress," "lungs are clear to auscultation," he had "normal motor function" and "normal deep tendon reflexes." (R. at 693–94). Further, "daily exercise was extensively discussed and encouraged." (*Id.* at 695). In August 2016, at a follow up, Dr. Sethi again noted Plaintiff had "no complaints" [*sic*]; was in "no acute distress," lungs were clear, he had normal motor function and deep tendon reflexes; and daily exercise "was extensively discussed and encouraged." (*Id.* at 762–65).

On March 13, 2017, the same day Dr. Sethi completed the physical capacities evaluation for Plaintiff, Dr. Sethi's treatment notes again documented that Plaintiff had "no complaints" [*sic*], with one exception under subjective complaints for "knee pain." (R. at 820–21). Nevertheless this record continued to show normal physical examination results and to recommend daily exercise and instruction to do one hour of walking three times per week. There was no further discussion of the knee pain or diagnosis or treatment related to the knee. (*Id.* at 821–24). In addition, none of Dr. Sethi's records contained complaints by Plaintiff about his arms. Based on these and other records, the ALJ concluded that Plaintiff's RFC was supported by the objective evidence confirming Plaintiff had "no motor, sensory or musculoskeletal impairment and that his asthma is controlled by medication." (R. at 29).

**B. The ALJ Properly Assessed the Medical Evidence**

Plaintiff argues that the ALJ relied on her own "inexpert opinion" to determine the RFC. (Dkt. 16 at 6, 13). The Court does not agree. "[T]he final responsibility for deciding [your RFC] is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). Here the ALJ appropriately considered the evidence including the consultative doctor's evaluation, state agency doctors' assessments, treatment notes, and other medical records, to determine the RFC.

In October 2014, Dr. Fauzia Rana completed a consultative examination of Plaintiff. (R. at 441–49). Dr. Rana noted that among other things, Plaintiff had a history of "CVA [stroke] in 2012 with no residual defects" and suffered from asthma for ten years. (*Id*. at 441). Dr. Rana observed that Plaintiff was in no acute distress, had no difficulty in breathing but started breathing heavy on various movements and had no difficulty on various movements. Dr. Rana reported that Plaintiff had no anatomic abnormality of either upper or lower extremity; no limitation of motion of shoulder, elbow or wrist joints; and normal, 5/5, muscle strength in both upper and lower extremities. (*Id*. at 443). Further, Plaintiff had "a normal gait and did not use an assistive device. He is able to walk more than 50 feet without assistance." Under Medical Source Statements, Dr. Rana wrote that Plaintiff "is able to sit, stand, speak and hear without difficulty. He has some difficulty in prolonged walking, lifting and carrying due to shortness of breath and easy fatigue." (*Id*. at 446).

The ALJ gave Dr. Rana's assessment some weight (incorrectly described as "slight" weight by Plaintiff (Dkt. 16 at 5)). The ALJ explained that "despite the

normalcy of findings, I find an exertional limitation rather than no exertional limitation and limitation to medium level exertion" to be proper. (R. at 26). Plaintiff contends that the ALJ did not discuss Dr. Rana's "finding that Plaintiff could not perform prolonged walking, lifting and carrying due to shortness of breath." (Dkt. 16 at 5). First, this is not what Dr. Rana said. She stated that Plaintiff was able to sit and stand "without difficulty" but had "*some difficulty* in prolonged walking, lifting and carrying due to shortness of breath and easy fatigue." (R. at 446) (emphasis added). Second, the ALJ expressly cited this statement by Dr. Rana, concluding that some exertional limitations were appropriate even though "motor strength, range of motion, special maneuvers and gait remain unimpeded." (*Id.* at 26). Later in her decision, the ALJ further explained that Dr. Rana's opinion and other evidence "suggest that in combination obesity and asthma result in some degree of exertional limit at least to the extent that heavy and very heavy work is precluded." (*Id.* at 29).

The ALJ also considered the state agency doctor opinions. The ALJ gave some weight to opinions concluding Plaintiff was capable of medium work with additional postural and environmental limitations because those opinions were well-supported and uncontroverted. (R. at 29). The ALJ gave lesser weight to an opinion that Plaintiff could work with no limitations because other evidence showed some limitations were needed. (*Id.*). Plaintiff challenges the weight given to the state agency opinions only in her reply, not her opening brief (Dkt. 24 at 2). *See Cornell v. BP Am. Inc.*, 2015 U.S. Dist. LEXIS 133185, at *20 (N.D. Ill. Sep. 30, 2015) ("arguments raised for the first time in a reply brief are waived."). Even if the Court did not consider this

argument waived, it is not convincing. An ALJ "may properly rely upon the opinion of these medical experts [the state agency physicians]." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Here the ALJ appropriately weighed the state agency opinions, considering Dr. Rana's opinion and the evidence in the record as a whole.

In addition to Dr. Rana's opinion and the state agency opinions, the ALJ extensively discussed other medical evidence in the record. (R. at 21–29). Yet Plaintiff argues that there are several deficiencies in the ALJ's analysis of the medical records. The first relates to Plaintiff's asthma. To account for Plaintiff's asthma, the ALJ included a limitation in the RFC that Plaintiff can "tolerate occasional exposure to extremes of temperature and fumes, odors, dusts or gases."[8] (R. at 22). Indeed past work was precluded because of pulmonary restrictions. (*Id.* at 29).

Plaintiff contends, however, that he "cannot be around fumes, dust, extreme temperatures or other pulmonary irritants," (Dkt. 16 at 6) without citing any medical evidence. The ALJ found Plaintiff's asthma to be well controlled by treatment. "An ALJ may rely on medical evidence that the condition is treated and controlled by medication." *Truelove v. Berryhill*, 753 F. App'x 393, 397 (7th Cir. 2018). It is true that in April 2016, a doctor noted that Plaintiff's asthma was "worsening" and "uncontrolled today" (R. at 646). But other medical records showed normal respiratory findings and asthma under control. (*See e.g.* 852–56). As the Commissioner notes, and the ALJ explained (R. at 27), there are numerous records

---

[8] *Stephens*, 888 F.3d at 329 ("'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.") (internal citations and quotations omitted).

showing Plaintiff's asthma was mild and controlled by medication. (Dkt. 23 at 5). *See Skinner*, 478 F.3d at 845 ("the existence of these diagnoses and symptoms does not mean the ALJ was required to find that Skinner suffered disabling impairments….evidence established that those symptoms are largely controlled with proper medication and treatment.").

Plaintiff also argues that the ALJ did not discuss Plaintiff's limitation of lifting his arm, back and leg pain, and the CT scan and MRI "showing cortical atrophy and lesions". (Dkt. 16 at 5). The ALJ acknowledged all of these but concluded that they did not give rise to any additional work-related limitations.

With regard to Plaintiff's arms, as the ALJ noted, there was no medical evidence showing any impairment in his arms. (R. at 29). The only evidence Plaintiff cites is his own testimony and Dr. Sethi's opinion. This Court found the ALJ did not err in giving no weight to Dr. Sethi's opinion, and for the reasons discussed below, finds the ALJ did not err in her assessment of Plaintiff's testimony. With regard to back and leg pain, the ALJ noted that there were few records noting Plaintiff's complaints, compared to a number of records where Plaintiff reported no pain or very little pain. And there were no records of follow-up or treatment for back, leg, or knee issues. Finally, the ALJ acknowledged the CT scan and MRI after Plaintiff's stroke. But Plaintiff fails to identify how these exam findings translate into any functional limitations. "It was [plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018). *See also*

*Perez v. Astrue,* 881 F. Supp. 2d 916, 945 (N.D. Ill. 2012) (explaining that diagnoses or symptoms do "not automatically translate to a limitation or impairment and simply listing them proves nothing").

Finally, Plaintiff argues that the ALJ pulled a 10 percent off-task restriction "out of thin air" when asking the VE questions. (Dkt. 16 at 12–13). This misrepresents the record. The ALJ asked the VE what the off-task tolerance would be for certain jobs and the VE responded, "Generally employers expect employees to be off task about 10 percent of the workday." (R. at 909). That was it. Therefore the Court does not understand Plaintiff's argument that the ALJ committed any error in asking the VE questions. Nor does Plaintiff explain what evidence, other than his own testimony, showed he must be off-task more than 10 percent of the day, or how this alleged error was not harmless. *See Egly v. Berryhill,* 746 F. App'x 550, 555 (7th Cir. 2018) (standard is harmless error review).

**C. Plaintiff Has Not Shown that the ALJ was Patently Wrong in Her Evaluation of His Hearing Testimony**

"ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses. Therefore, we will only overturn the ALJ's credibility determination if it is patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin,* 759 F.3d 811, 815-16 (7th Cir. 2014) (internal citations omitted). The RFC need only include those restrictions "that were supported by the medical evidence *and that the ALJ found to be credible.*" *Outlaw v. Astrue,* 412 F. App'x 894, 898 (7th Cir. 2011) (emphasis added). Plaintiff has not shown that the ALJ's decision was patently wrong.

At the hearing, Plaintiff testified about back and leg pain, difficulty lifting his arm, reliance on a cane, ability to walk only one block and to lift only ten pounds. (R. at 886–906). The ALJ found, however, that the medical record did not support the severity of the symptoms described by Plaintiff. The ALJ explained that there were a number of inconsistencies between his hearing testimony and the record, detracting from his subjective allegations. (R.at 28). These included: (1) Plaintiff's lack of complaints to his medical providers and statements to providers that his pain level was "0"; (2) medical findings that Plaintiff's asthma was mild; (3) generally normal physical findings with ongoing instruction to exercise; (4) records showing successful treatment for asthma, hypertension, sleep apnea and diabetes; (5) his hearing testimony about daily activities conflicted with his prior statements in the record about those activities;[9] and (6) he has no side effects from medication.

Other factors also informed the assessment of Plaintiff's subjective allegations. The ALJ considered that Plaintiff was evaluated for physical therapy, but the evaluation concluded that Plaintiff was at the "baseline" and he had "no needs." (R. at 24, 302). Thus he was not referred for physical therapy. The ALJ also noted that there was no evidence in the record to corroborate Plaintiff's claim that he was prescribed a cane. Rather, there were records expressly noting that Plaintiff's gait was normal and he did not require an assistive device.

---

[9] The ALJ discussed inconsistencies related to Plaintiff's reports of daily activities in evaluating his credibility. The Court notes that the ALJ did <u>not</u> improperly conclude that because Plaintiff could perform certain daily activities, that translated into an ability to work full-time. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

The Court agrees with the Commissioner that Plaintiff has not shown that he should have been limited to sedentary work and therefore the grid rules for individuals over 50 do not apply. (Dkt. 23 at 14). Moreover, even if Plaintiff argued that he should have been limited to light work (which he does not), the VE testimony showed there would be jobs in the national economy that Plaintiff could perform. (R. at 907–08). *See Guranovich v. Astrue*, 465 F. App'x 541, 543 (7th Cir. 2012) (reiterating harmless error standard and explaining that even under alternative RFC, significant number of jobs available to Plaintiff in the national economy).

**D. The ALJ Did Not Fail to Develop the Record**

Plaintiff argues that the ALJ should have sought more evidence and developed the record. (Dkt. 16 at 13–15). Plaintiff overlooks two important points. First, it is his burden to prove he is disabled. *See* 20 C.F.R. § 404.1512(a)(1). Second, Plaintiff has a heavy burden to prove that the ALJ failed to develop a full and fair record.

"While a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record…This duty is enhanced when a claimant appears without counsel." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citations omitted). Here Plaintiff is and has been represented by counsel. To prove the ALJ failed to develop the record, a plaintiff "must point to specific, relevant facts that the ALJ did not consider" (*Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019)), and "a significant omission is usually required." *McMurtry v. Astrue*, 749 F. Supp. 2d 875, 880 (E.D. Wis. 2010) (quotations omitted). "[A]n omission is significant only if it is prejudicial." *Nelms*, 553 F.3d at 1098.

Plaintiff makes vague arguments about the ALJ's failure to develop the record, including that if the ALJ had questions about the record or treating source opinion, she should have sought more evidence. (Dkt. 16 at 15). Nowhere in the ALJ decision did she suggest the record was insufficient to make a decision. To the extent Plaintiff implies that the ALJ should have re-contacted Dr. Sethi about his opinion, as the Seventh Circuit explained in *Britt*: "the ALJ was not required to [re-contact a doctor] because the record contained adequate information for the ALJ to render a decision." 889 F.3d at 427. Plaintiff relies on *Nelms*, but that case involved a pro se plaintiff, who demonstrated that there was a two-year evidentiary gap and provided specific documents which the Seventh Circuit found supported his "theory that the ALJ likely would have found Nelms disabled had he considered them." 553 F.3d at 1098. Here Plaintiff fails to identify any specific evidentiary gaps or cite any evidence the ALJ did not consider that would have changed her decision. In addition, Plaintiff does not argue that any prejudice resulted from the alleged failure to develop the record.

In sum, the ALJ built a logical bridge between the evidence and her conclusion that Plaintiff was not disabled. The Court declines to reweigh the evidence or substitute its own judgment for that of the ALJ. *See Shideler*, 688 F.3d at 310.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [15] is **DENIED**, and the Commissioner's motion [22] is **GRANTED**. The final decision of the Commissioner is affirmed.

E N T E R:

Dated: August 5, 2019

---
MARY M. ROWLAND
United States Magistrate Judge